UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Magistrate Judge Gudrun J. Rice


Civil Action No. 06-cv-00249-WYD-GJR

HOME DESIGN SERVICES, INC.,

      Plaintiff,

v.

B&B CUSTOM HOMES, LLC,
DAVID BAGG, DENISE BAGG,
BENNETT CONSTRUCTION, INC.,
LARRY W. BENNETT, JOHN J. BENNETT,
FRED BISHOP ENTERPRISES, INC.,
FRED W. BISHOP III,
INFINITY BUILDERS, INC. f/k/a CASTLE HOMES, INC.,
WILLIAM J. FITZGERALD,
MERRITT CONSTRUCTION, INC.,
MERRITT L. SIXBEY, JR.,
SUSAN MARIE SIXBEY,
PAUL RIENSHE,
SERRA CONSTRUCTION, INC.,
GARY L. POUSH,
SANDRA L. DORR,

      Defendants.

_____


**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION
FOR RECONSIDERATION REGARDING THE DISCOVERABILITY OF
PLAINTIFF'S LITIGATION REVENUE (Docket # 708)**
_____


      THIS MATTER comes before the Court on Defendants' Motion (docket # 708) for

Reconsideration Regarding the Discoverability of Plaintiff's Litigation Revenue. The matter is

fully briefed and oral argument was heard in Grand Junction, Colorado on May 5, 2008.

For the reasons set forth below the Defendants' Motion is **granted** in part and **denied** in part.

## BACKGROUND

Plaintiff Home Design Services (HDS) has sued numerous Defendants for alleged copyright infringement. Plaintiff alleges that Defendants, home builders and their owners, engaged in copyright infringement by building homes copied from HDS copyrighted plans.

Defendants previously sought to discover the amount of revenue Plaintiff generates from litigation-related activities. Defendants requested a ruling regarding the discoverability of information related to revenue Plaintiff receives from litigation in other copyright cases throughout the country, including amounts received from any verdicts, judgments, court decrees, and settlement agreements ("litigation revenue"). See Defendants' Reply Brief (docket # 450 at 3-4) in Support of Discoverability of Plaintiff's Actual Damages.

This Court denied Defendants' request for inquiry into Plaintiff's litigation revenue, by Order dated July 19, 2007 (docket # 542), by restricting discovery of Plaintiff's actual damages solely to the plans at issue in Plaintiff's Amended Complaint (docket # 353) from 2003 forward. By the terms of the July 19, 2007 Order, Defendants were granted leave to petition the court for reconsideration of the Order, upon additional evidence or argument presented by Defendants supporting further inquiry into Plaintiff's actual damages substantiation.

Defendants have now, by this Motion (docket # 708) before the Court, moved for reconsideration regarding the discoverability of Plaintiff's litigation revenue. Defendants request that this Court reconsider the July 19, 2007 Order and grant Defendants leave to inquire

at depositions into Plaintiff's litigation revenue from 1996 forward, require Plaintiff to produce documents, including settlement agreements, sufficient to identify with certainty Plaintiff's gross litigation-related revenue from 1996 forward, and require Plaintiff to produce documents sufficient to identify with certainty how much of Plaintiff's gross income is litigation related..

In support of this Motion and their request for reconsideration of the discoverability of Plaintiff's litigation revenue, the Defendants bring to the Court's attention these additional arguments: 1) evidence of Plaintiff's litigation revenue bears on Defendants' affirmative defense of copyright misuse; 2) evidence of Plaintiff's litigation revenue bears on the credibility of Plaintiff's potential witnesses.

## STANDARD OF LAW

Federal Rule of Civil Procedure 26(b)(1) allows parties to:

> obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense, including the existence, description, nature, custody, condition, and location of any documents or other tangible things and the identity and location of persons who know of any discoverable matter. For good cause, the court may order discovery of any matter relevant to the subject matter involved in the action. Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence.

"Relevancy is to be construed more broadly during discovery than at trial." *Centurion Industries, Inc. v. Warren Steurer and Associates*, 665 F.2d 323, 326 (10th Cir. 1981) "Relevancy is broadly construed at the discovery state of litigation and a request for discovery should be considered relevant if there is any possibility that the information sought may be relevant to the subject matter of the action." *Flour Mills of America, Inc. v. D.F. Pace*, 75 F.R.D. 676, 680 (10th Cir. 1977)

**DEFENDANTS' AFFIRMATIVE DEFENSE OF COPYRIGHT MISUSE**

Defendants have raised the affirmative defense of copyright misuse. The copyright misuse doctrine is an equitable defense to a copyright infringement action that forbids the use of a copyright to secure an exclusive right or limited monopoly not granted by the copyright office and is contrary to public policy to grant. *See* 185 ALR Fed 123, citing *Alcatel USA, Inc. v. DGI Technologies, Inc.* 166 F.3d 772, 792 (5th Cir. 1999).

Plaintiff has the burden of establishing that it holds a copyright and that Defendants infringed the copyright by advertising, designing or constructing and participating in the construction of a residence which was copied largely or was an exact duplicate of a design or plan of Plaintiff.

Defendants bear the burden of establishing their affirmative defense of copyright misuse. Defendants must prove that Plaintiff "illegally extended its monopoly beyond the scope of the copyright or violated the public policies underlying the copyright laws." *In re Indep. Serv. Orgs. Antitrust Litig.*, 85 F.Supp.2d 1130, 1175 (D.Kan 2000).

Defendants argue that Plaintiff is unlawfully extending its purported monopoly by seeking protection over non-protectable elements of its plan, such as common layouts and floor plans. Defendants contend that Plaintiff's plans contain largely generic, unoriginal elements and thus are not afforded protection under copyright law. Defendants further assert that Plaintiff is violating public policy underlying the copyright laws by using its purported copyright as a mechanism to generate more revenue through litigation than through the actual plan sales.

Defendants apparently find it difficult to comprehend that a particular arrangement of

three bedrooms, living room, kitchen and bath, for example, is subject to the protection of the federal copyright laws. But protection for architectural plans and designs is afforded by the federal copyright laws.

Copyright protection is currently embodied in the Copyright Act of 1976. It was not until 1990 that the Copyright Act was amended to extend its protection to the overall shape of three-dimensional works of architecture. Amended section 101 defines "architectural work" as "the design of a building as embodied in any tangible medium of expression, including a building, architectural plans, or drawings. The work includes the overall form and elements in the design, but does not include individual standard features." The amended statute now makes it an infringement to construct a building that copies from another's protectable two-or three-dimensional design.

The Honorable Wiley D. Daniel, in the case cited by the Defendants, *Medias & Co, Inc. v. Ty, Inc*., 106 F.Supp.2d 1132 (D.Colo. 2000), discussed the difficulties inherent in separating the ideas, and basic utilitarian functions, which are not protectable, from the particular expression of the work, which is protectable and copyrightable.

The *Medias v. Ty* case, *supra*, dealt with an alleged infringement of a Beanie Baby plush toy, specifically a yellow duck with a bright orange bill and bright orange feet named "Quackers." Judge Daniel found that the idea of a plush duck is not protectable. Neither is the fact that the duck has a bill, bright yellow plush fabric for the head and body, two webbed feet and two eyes. However, the particular way in which Ty expressed the idea of a duck was protected. *Medias v Ty*, *supra*, at 1137

Judge Daniel found that the particularized expression of the Beanie Baby "Quackers" included "the unique shape of Quackers' head and body, combined with bright yellow plush fabric for the head and body, combined with a bright orange, less plush flared bill, combined with the same bright orange, less plush webbed feet attached directly to the body without intervening legs, combined with two round black shiny eyes made of hard plastic, placed on the front of the face rather than the sides of the head; combined with eyebrows made out of black thread; combined with no wings,...." *Id.* at 1137 Judge Daniel found that the particularized expression of "Quackers" was protected by the Copyright Act.

The Plaintiff seeks to establish that the particular way in which rooms, their sizes, their orientation, their arrangement have been placed in a plan or design is copyrightable and protectable. The Plaintiff seeks to establish that the particular expression contained in the HDS plans, made up of elements common to all plans, such as doors and windows and kitchens and dining rooms and living rooms and bedrooms and bathrooms, is original, copyrightable and protectable.

The fact that the Plaintiff has been successful in protecting copyrighted designs and has generated revenue through litigation would not appear to pertain to the elements of the defense of copyright misuse. The fact that the Plaintiff has litigated claims under the federal Copyright Act and has been successful in that litigation fact does not indicate to this Court that the Plaintiff has engaged in copyright misuse. The Defendants must establish that the Plaintiff extended its purported monopoly beyond the scope of the copyright. I find that litigation revenue of the Plaintiff in other cases around the country does not tend to show that the Plaintiff illegally

extended its monopoly beyond the scope of the copyright laws. I find that the information sought by Defendants with regard to Plaintiff's litigation revenue from around the country is unlikely to lead to the discovery of admissible evidence regarding the Defendants' affirmative defense of copyright misuse, based on an extension of a purported monopoly.

Nor does the fact that the Plaintiff has recovered more in litigation revenue than the cost of the plans tend to show that the Plaintiff has violated the public policy underlying copyright law.

Section 504(b) of the Copyright Act protects the copyright holder by allowing the copy right holder to recover not only the actual damages but also any of the infringer's profits. As the Plaintiff states in its brief, damages are awarded to compensate the copyright owner for losses from the infringement and profits are awarded to prevent the infringer from unfairly benefitting from a wrongful act. Section 504(b) is punitive in nature because it is designed to deter copyright infringement. *See* H.R.Rep. No. 94-1476, 94th Cong., 2nd Sess., 161 (1976), U.S. Code Cong. & Admin. News 1976, pp. 5659, 5777 as cited in Plaintiff's Response (docket # 746 at page 3 of 6). Damages are awarded to compensate the copyright owner for losses from the infringement, and profits are awarded to prevent the infringer from unfairly benefitting from a wrongful act.

Even if revenue from litigation exceeds the cost of the plans, there is nothing in this fact that would tend to show that the Plaintiff has acted in violation of the public policies underlying copyright law. I find that litigation revenue is not reasonably calculated to lead to the discovery of information tending to show that the Plaintiff has violated the public policies underlying

copyright law. I consequently find that the information sought by the Defendants with regard to the Plaintiff's litigation revenue from cases brought around the country is unlikely to lead to the discovery of admissible evidence in support of the Defendants' copyright misuse defense based on violation of public policy.

## LITIGATION REVENUE AS BEARING
## ON CREDIBILITY OF PLAINTIFF'S WITNESSES

Defendants also assert that information with regard to Plaintiff's litigation revenue would tend to show that Plaintiff's potential witnesses have a pecuniary interest in the outcome of this litigation. Here I find the Defendants' arguments more persuasive. Defendants should be allowed to make limited inquiry into Plaintiff's litigation revenue to discover how much is at stake for the witnesses. I find that for this limited purpose litigation revenue is discoverable pursuant to Fed.R.Civ.P. 26(b) in so far as the witnesses have received litigation bonuses or litigation related income. The Plaintiff has stated that it is willing to produce, by way of supplemental interrogatory answer, the aggregate amount received through litigation. (Plaintiff's Response - docket # 746 at page 4 of 6) The Plaintiff shall do so. The Defendants shall be allowed to inquire of Plaintiff's potential witnesses, including Plaintiff's CEO, experts, and fact witnesses, with regard to their pecuniary interest in litigation revenues. The Defendants may seek to discover exactly how much is at stake for the witnesses by reviewing how much money the witnesses have made as a consequence of litigation revenue in the past. The litigation revenue is discoverable as being reasonably calculated to lead to impeachment evidence. The Defendants are not, however, entitled to the discovery of particular verdicts, judgments, court

decrees and settlement agreements. Nor shall the Defendants be permitted to obtain the documents, including settlement agreements, which would identify Plaintiff's gross litigation related revenue from 1996 forward.

## CONCLUSION

I find and conclude that discovery of information related to revenue Plaintiff has received from litigation in other copyright cases throughout the country is not reasonably calculated to lead to the discovery of admissible evidence with regard to the Defendants' affirmative defense of copyright misuse. I find and conclude that discovery of limited litigation related revenue is reasonably calculated to lead to the discovery of admissible evidence with regard to the bias of the Plaintiff's potential witnesses and with regard to potential impeachment of Plaintiff's witnesses.

## ORDER

It is hereby ORDERED that Plaintiff will produce, by way of a supplemental interrogatory answer, the aggregate amount of money received through litigation from 1996 forward.

It is hereby ORDERED that the Defendants' Motion for Reconsideration regarding the discoverability of Plaintiff's litigation revenue is GRANTED to the extent that the Defendants shall be permitted to inquire at depositions with regard to the pecuniary interest of Plaintiff's potential witnesses in the outcome of the litigation, by reviewing how much money Plaintiff has made in litigation revenue in the past.

It is ORDERED that the Defendants' Motion is DENIED with regard to the request to require Plaintiff to produce documents, including settlement agreements, sufficient to identify Plaintiff's gross litigation-related revenue, in support of the Defendants' affirmative defense of copyright misuse.

Dated this 30th day of May, 2008.

BY THE COURT:

s/ Gudrun J. Rice

_____

Gudrun J. Rice
U.S. Magistrate Judge